***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award except with the modification of Findings of Fact #3, #9 and #10 and minor modifications.
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties as
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Defendant-employer was an approved self-insured with Novant Health acting as its administrator at all relevant times.
4. Plaintiff's average weekly wage will be determined from a Form 22 to be provided by defendant and from the evidence in this matter.
5. The deposition of Alan Charles Gorrod and the deposition and medical records of Dr. Jerome E. Jennings are a part of the evidentiary record in this matter.
6. The issues to be determined are as follows:
 a) Whether plaintiff sustained an injury by accident or developed an occupational disease while in the course and scope of her employment with defendant-employer on April 24, 2000.
 b) If so, what, if any, benefits is she entitled to recover under the Workers' Compensation Act?
 ***********
Based upon all of the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff was twenty-nine years old at the time of the hearing before the Deputy Commissioner. Plaintiff began working for defendant-employer in February 1999 as an ICU nurse earning $16.35 per hour for 24 hours and $18.35 per hour for another 12 hours per week, yielding an average weekly wage of $612.60 per week.
2. Plaintiff's duties included providing mouth care and medicine, maintaining IV's, which required her to reach to operate the pumps and alarms over the patients' heads, turning patients and performing other duties for the care and comfort of the patients.
3. On or about April 24, 2000, plaintiff and a co-worker, Jan Rogers, another RN in the ICU, were in the process of turning a 200-pound patient in bed when the ventilator tube, which ran into the patient's throat through a tracheotomy, came out of the tracheotomy. Plaintiff released the pad that the patient was on with her left hand to catch the tube and attempted to place it back into the tracheotomy so the patient would be able to continue breathing. When plaintiff released the pad with her left hand she felt pain in her right shoulder. The patient would not be able to breathe if the tube was not attached to the tracheotomy; therefore, plaintiff had to react quickly and reach to replace the tube.
4. Plaintiff attempted to work after this incident but was unable to continue due to the increased pain she was experiencing. Plaintiff left work after reporting the incident to her supervisor and went to Prime Care where she was treated by placing her right arm in a sling and instructed not to use her arm until further evaluation. Thereafter, plaintiff was sent to Dr. Jerome Jennings for further evaluation.
5. On May 11, 2000, plaintiff initially saw Dr. Jennings who diagnosed plaintiff's condition as a probable internal tear of the rotator cuff with impingement of the right shoulder. On May 16, 2000, Dr. Jennings performed arthroscopic surgery on plaintiff's right shoulder, which confirmed his original diagnosis.
6. Dr. Jennings removed plaintiff from work beginning May 11, 2000 and continuing through June 6, 2000 when he released her to light duty. Thereafter, Dr. Jennings released plaintiff without restrictions on or about July 19, 2000. Although Dr. Jennings released plaintiff to return to regular duty on July 19, 2000, plaintiff did not return to regular duty because of the lack of strength in her right arm and shoulder. Dr. Jennings placed plaintiff in therapy in August 2000 to strengthen her right shoulder and arm.
7. Dr. Jennings found plaintiff was at maximum medical improvement, but he did not provide her a permanent partial disability rating.
8. According to Dr. Jennings, plaintiff's rotator cuff tear resulted from plaintiff attempting to hold the patient on April 24, 2000 after the tube came loose.
9. When plaintiff reacted to the immediate need to replace the tube and released the pad with her left hand, which she and Ms. Rogers were using to turn a patient, and shifted all the weight onto her right arm and shoulder, there was an interruption of her normal work routine. Plaintiff normally turns a patient with a pad using two hands but on this occasion there was an urgency to replace the tube to allow the patient to breath, which caused plaintiff to be in an awkward position which placed more weight on her right arm.
10. Ms. Roper Halverson, a nurse manager and plaintiff's supervisor, indicated that she had been a registered nurse for 23 years including in the ICU. Ms. Halverson stated that tracheotomy tubes sometimes become disconnected and that when one does, it is an emergency situation that must be handled promptly to restore oxygen to the patient. Although Ms. Halverson stated that a tube had come out while she was working with a patient, she could not state how often such an incident would occur while turning a patient which would require an immediate reaction.
11. The greater weight of the evidence of record including the testimony of Alan Gorrod fails to demonstrate that plaintiff sustained an occupational disease.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on April 24, 2000 while in the course and scope of employment with defendant-employer. However, plaintiff has failed to prove that she sustained an occupational disease as the result of her employment. N.C. Gen. Stat. § 97-2(6); §97-53(13).
2. Plaintiff is entitled to receive disability benefits for her incapacity to earn the same or greater wages as a result of the injuries she sustained for the time period she was incapable of earning any wages beginning April 26, 2000 and continuing through June 6, 2000 and thereafter for any partial disability if she was not paid her pre-injury average weekly wage when she returned to light duty work. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30.
3. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to receive reasonably necessary medical benefits which tend to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff's average weekly wage at the time of her injury by accident was $612.60 per week, yielding a compensation rate of $408.42 per week. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following
 AWARD
1. Subject to a reasonable attorney's fees approved herein, defendant shall pay to plaintiff total disability benefits at the rate of $408.42 per week beginning April 26, 2000 and continuing through June 6, 2000. If plaintiff was not paid her regular average weekly wage when she returned to light duty on June 6, 2000 then, defendant shall pay plaintiff any partial disability benefits she may be entitled to receive. All sums that have accrued shall be paid in one lump sum.
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendant shall pay for all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been approved in accordance with Commission procedure, for so long as such evaluations, treatments and examinations tend to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff is hereby approved for plaintiff's counsel and shall be paid to plaintiff's counsel by deducting twenty-five percent (25%) from the compensation due plaintiff.
4. Defendant shall pay the costs due the Commission.
This the ___ day of December 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER